154

## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Commonwealth of Virginia

v.

Dondrill G. White

By Judge Dean W. Sword, Jr.

January 10, 2002

Case No. (Indictment) CR01-2166

This matter comes before the court upon the motion of the defendant to suppress certain evidence obtained during his arrest for a traffic violation.

At a hearing conducted on January 7, 2002, the court received evidence that this defendant was observed driving an automobile and making a turn without giving proper signal. Va. Code § 46.2-848. After stopping the vehicle for the traffic offense, Officer Riddick of the Portsmouth Police Department determined that the defendant's privilege to drive had been suspended or revoked and he was also in violation of Virginia Code § 46.2-301, a class 1 misdemeanor. Class 1 misdemeanors carry a possible sentence of twelve months in jail. Va. Code § 18.2-11(a).

Upon discovery of this violation of law, Officer Riddick made a physical arrest of the defendant by placing him in handcuffs and putting him in the back seat of a marked police car. Riddick then proceeded to search the defendant's car in the area "within arm's length of the driver's seat" previously occupied by the defendant.

This search revealed a paper towel, which contained heroin capsules.

Defense counsel raises several issues in urging suppression. The court, being of the opinion that this matter is controlled by *Lovelace v. Commonwealth*, 258 Va. 588, 594-95 (1999), and *West v. Commonwealth*, 36 Va. App. 237, 240-41 (2001), does elect to decide the matter solely on that basis.

The motion of the defendant to suppress the evidence is granted.

January 17, 2002

Case No. (Indictment) CR01-2662

This matter comes before the court upon the motion of the defendant to suppress certain evidence obtained during a consensual search of his residence.

*Facts*

A hearing was held before the court at which time evidence was received indicating the defendant was arrested on June 28, 2001, on a charge of possession of heroin with the intent to distribute. This arrest was made by a uniformed patrol officer as a result of evidence discovered during a traffic stop. That arrest and charges are the subject matter of our indictment number CR01-2166. By an opinion letter dated January 10, 2002, this court has granted the motion of the defendant to suppress the evidence obtained during the traffic stop pursuant to the rule expressed by *Lovelace v. Commonwealth*, 258 Va. 588, 594-95, 522 S.E.2d 856 (1999), and *West v. Commonwealth*, 36 Va. App. 237, 240-41, 549 S.E.2d 605 (2001).

As a result of the June 28 arrest, the defendant was unable to immediately obtain bond and was in the custody of the Portsmouth Sheriff's Department on June 29, 2001.

Portsmouth narcotics officer Defreitas testified that he came to work on the morning of June 28 and, having had no part in the arrest of the defendant the previous evening, had no knowledge of those events. Det. Defreitas was approached by a deputy sheriff named Hudson, who had charge of the prisoners before the general district court that morning. Hudson advised Defreitas that he worked as a part-time security guard at the apartment complex where the defendant resided, and, while the precise information has not been presented, had information that led Det. Defreitas to interview the defendant. This interview took place in one of the court holding cells while the defendant awaited arraignment on the other charges. During this interview, Det. Defreitas sought and obtained the defendant's written consent to a search of his apartment. This search led to the discovery of additional narcotics and the charges contained in this indictment.

## The Issues

Having ruled in the other matter that the June 28 physical arrest of the defendant and the subsequent recovery of that evidence was improper, we now determine if that matter has implication here.

It should be observed that the court did not rule in the other matter that the officer had no constitutional basis for making a traffic stop. The June 28 physical arrest was a violation of Virginia statutory law and subject to Virginia case law (see above) regarding the right to conduct a search of the defendant pursuant to an arrest. (Obviously the June 28 cocaine charges were a result of the violation of state law. The court also notes the recent U.S. Supreme Court decision of *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), which would seem to establish that a physical arrest on minor traffic charges creates no federal constitutional issue when allowed by state law.)

So then, our issue may be properly phrased as this: does a lawful traffic stop which leads to an improper physical arrest of a defendant create a "fruit of the poisonous tree" problem when the defendant, while in custody, consents to a search of his residence which leads to the discovery of additional illegal narcotics resulting in the current charge?

The "fruit" argument was first established by the U.S. Supreme Court in the matter of *Wong Sun v. United States*, 371 U.S. 471 (1963). Briefly, this case holds that when the Fourth Amendment to the U.S. Constitution is violated, that violation prohibits law enforcement from using evidence obtained after the violation. As with most U.S. Supreme Court decisions, there are, however, exceptions to the rule. For example see *United States v. Crews*, 445 U.S. 463, 63 L. Ed. 2d 537, 100 S. Ct. 1244 (1980); *Segura v. United States*, 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380 (1984); and *Johnson v. Louisiana*, 406 U.S. 356, 32 L. Ed. 2d 152, 92 S. Ct. 1620 (1972).

The appellate courts of this state follow and apply in appropriate constitutional cases the *Wong Sun* rule.

This court struggles with the concept as to whether or not the *Wong Sun* rule applies here since an argument can be made that there is no predicate federal constitutionally prohibited arrest. This consideration becomes even more significant when we remember that the right to suppress illegally obtained evidence never existed under Virginia law until it was mandated by the U.S. Supreme Court. *Hawley v. Commonwealth*, 206 Va. 479, 144 S.E.2d 314 (1965); *Hall v. Commonwealth*, 138 Va. 727, 121 S.E. 154 (1924). The court simply does not know what posture the Virginia court would now take when confronted with a search and seizure issue such as this where an argument can be advanced that no federal constitutionally protected right has

been violated. Assuming that the suppression rule had become so ingrained in our case law and since this matter is capable of decision assuming that the suppression issue applies, we shall make that assumption and go forth. (But also see Virginia Code § 19.2-60 which now supports a suppression issue.)

As we noted above, there are certain well recognized exceptions to the "fruit" doctrine "namely: (1) evidence attributed to an independent source; (2) evidence where the connection has become so attenuated as to dissipate the taint; and (3) evidence which inevitably would have been gained even without the unlawful action." *Walls v. Commonwealth*, 2 Va. App. 639, 652, 347 S.E.2d 175 (1986); *Commonwealth v. Ealy*, 12 Va. App. 744, 755, 407 S.E.2d 681 (1991); and *Warlick v. Commonwealth*, 215 Va. 263, 266, 208 S.E.2d 746 (1974).

There is, outside of the "fruit" argument, no question that the search of the defendant's residence was proper. The Commonwealth has presented in evidence a consent to search signed by the defendant.

Two recent cases from the Court of Appeals are somewhat instructive.

*Wood v. Commonwealth*, 27 Va. App. 21, 30-31, 497 S.E.2d 484 (1998), concerned a search by consent. The consent was obtained following an initial search without proper legal authority. In finding that the initial search was improper the court held there was no independent source for the evidence because of the subsequent consent and suppressed the evidence.

*Whitaker v. Commonwealth*, 27 Va. App. 21, 35-36 (2001), is also helpful. Here, the police obtained a search warrant for the defendant's residence. On the way, they came across the defendant in his truck, detained, and searched him. The search of the defendant's person revealed marijuana. The search of the defendant's person was deemed illegal; however, the search of the house pursuant to the warrant was not tainted and therefore valid.

Applying the *Warlick* rule to our case, the court is of the opinion that this evidence was obtained by the police from an "independent source" (Dep. Hudson), that there was little or no connection between Dep. Hudson, Det. Defreitas, and the arrest of the defendant the previous day; and, arguably, the evidence may very well have come to the attention of the police in any event.

As the court observed at the hearing, there is no linear connection between the June 28 arrest and this arrest. While the case law does not necessarily require a linear connection, this court is convinced that assuming that there is a taint, any connection "has become so attenuated as to dissipate" it.

The motion to suppress is denied.