Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Carrico, S.J.

DAVID LEE MOORE

OPINION BY

v.  Record No. 052619    SENIOR JUSTICE HARRY L. CARRICO
                                  November 3, 2006

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal implicates Code § 19.2-74(A)(1).  In pertinent part, this Code section provides that when a police officer detains a person for a Class 1 misdemeanor, the officer "shall . . . issue a summons . . . to appear at a time and place to be specified in such summons," and "[u]pon the giving by such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody."  The Code section also contains several exceptions allowing a warrantless arrest pursuant to Code § 19.2-82 "if any such person shall fail or refuse to discontinue the unlawful act" or "if any person is believed by the arresting officer to be likely to disregard a summons . . . or . . . cause harm to himself or to any other person."

On February 20, 2003, two City of Portsmouth detectives, responding to a radio message that a motorist was operating a motor vehicle on a suspended license, stopped a vehicle being driven by the defendant, David Lee Moore.  The officers ascertained that Moore was in fact operating on a suspended

license.  Although the offense is a Class 1 misdemeanor, Code § 46.2-301(C), the officers did not issue Moore a summons but arrested him, handcuffed him, and placed him in a police vehicle.  They gave him the Miranda[1] warnings and secured his signature on a consent to search his room at the hotel where he was staying.  They then took him to the hotel room.

Because of a "miscommunication" between the officers, they did not search Moore at the time he was arrested.  Upon reaching his hotel room, they searched his person and found approximately 16 grams of crack cocaine in his jacket pocket and $516.00 in cash in his pants pocket.  He admitted the cocaine was his.

Moore was indicted for possession of cocaine with intent to distribute.  Code § 18.2-248.  He then moved to suppress all the evidence obtained in the search of his person,[2] asserting that the seizure of the evidence violated the provisions of the Fourth, Fifth, and Sixth Amendments to the Constitution of the United States.

The trial court denied the motion to suppress.  In a bench trial, the court convicted Moore of possession with intent to

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).
[2] In the hearing on the motion to suppress, one of the arresting officers was asked why Moore was arrested rather than given a summons.  The officer replied, that it was "[j]ust our prerogative, we chose to effect an arrest."

2

distribute cocaine and sentenced him to serve five years in the penitentiary, with one year and six months suspended.

Moore appealed his conviction to the Court of Appeals of Virginia. A divided panel of the court reversed Moore's conviction, finding the search of Moore "in violation of the Fourth Amendment." Moore v. Commonwealth, 45 Va. App. 146, 155, 609 S.E.2d 74, 79 (2005). However, upon rehearing en banc, a majority affirmed the conviction, finding that Moore's arrest did not violate his Fourth Amendment rights. Moore v. Commonwealth, 47 Va. App. 55, 64, 622 S.E.2d 253, 258 (2005). We awarded Moore this appeal.

On appeal, Moore argues that Code § 19.2-74 requires that the police issue a summons to a person detained for a Class 1 misdemeanor and to forthwith release him from custody upon his promise to appear at a specified time and place, unless he is subject to one or more of the exceptions listed in the statute. Moore asserts that none of the exceptions apply in this case.[3]

_____

[3] The Court of Appeals found that "[b]ecause the record is devoid of any evidence to suggest Moore failed to discontinue the unlawful act, or that the facts could render a reasonable belief that Moore would fail to comply with the summons or cause harm to himself or others, . . . the arrest violated the express provisions of Code § 19.2-74." Moore, 47 Va. App. at 63, 622 S.E.2d at 257. The Commonwealth has not assigned cross-error to this finding. Accordingly, we will not consider the Commonwealth's argument that "[i]nasmuch as there was no one else to drive Moore's vehicle, the officers were within their statutory authority to arrest Moore; otherwise, he would have been unable to 'discontinue the unlawful act' of driving on a

3

Moore says that "[w]hen a person is unlawfully detained, as [he] was when he was arrested rather than being given a citation, the fruits of the unlawful detention must be suppressed."  Moore concludes that the Court of Appeals en banc erred in holding that his "arrest and search did not violate the Fourth Amendment."

On the other hand, the Commonwealth argues that the search of Moore was valid.  The Commonwealth maintains that "the police officers had probable cause to arrest Moore because he committed a misdemeanor in their presence," and the "search incident to an arrest . . . did not violate the Fourth Amendment."

In support of his position, Moore cites the decision of the Supreme Court of the United States in Knowles v. Iowa, 525 U.S. 113 (1998), and this Court's decision in Lovelace v. Commonwealth, 258 Va. 588, 522 S.E.2d 856 (1999).  In Knowles, an Iowa statute allowed a police officer to arrest a person for a traffic offense and immediately take him before a magistrate or to issue a citation in lieu of arrest.  The statute further provided that the issuance of a citation in lieu of arrest "does not affect the officer's authority to conduct an otherwise lawful search."  525 U.S. at 115 (citing and quoting Iowa Code Ann. § 805.1(4)).

_____

suspended license."  See Commonwealth v. Cary, 271 Va. 87, 90 n.1, 623 S.E.2d 906, 907 n.1 (2006).

4

An Iowa policeman stopped Knowles for speeding and issued him a citation rather than arresting him.  The officer then conducted a full search of the vehicle without either Knowles' consent or probable cause, found marijuana and a "pot pipe," and placed Knowles under arrest.  Knowles moved to suppress the evidence.  The trial court denied the motion and Knowles was found guilty.  The Supreme Court of Iowa affirmed, upholding the constitutionality under a bright-line "search incident to citation" exception to the Fourth Amendment's warrant requirement.  Id. at 115.

The Supreme Court of the United States reversed.  Noting that the officer had issued Knowles a citation rather than arresting him, the Court stated that the "[t]he question presented is whether such a procedure authorizes the officer, consistently with the Fourth Amendment, to conduct a full search of the car."  The Court answered the question "no."  Id. at 114.

The Court explained that in United States v. Robinson, 414 U.S. 218 (1973), it had recognized a search incident to arrest exception to the Fourth Amendment, which allows a full field-type search of the person incident to a lawful custodial arrest. The Court noted that the exception was based upon "two historical rationales for the 'search incident to arrest' exception: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for

5

later use at trial." Knowles, 525 U.S. at 116. However, the Court found that "neither of these underlying rationales for the search incident to arrest exception is sufficient to justify the search in the present case." Id. at 117.

The Court also said that while the concern for officer safety in a routine traffic stop "may justify the 'minimal' additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search." Id. The Court also said that Iowa had not shown a need to discover and preserve evidence. Id. at 118. Although asked to do so, the Court declined to extend the bright-line search incident to arrest exception to the Fourth Amendment recognized in Robinson to include a search incident to citation, a situation, the Court concluded, "where the concern for officer safety is not present to the same extent and the concern for destruction or loss of evidence is not present at all." Id. at 119.

The Commonwealth argues that Knowles is not dispositive because the defendant there was not arrested and the decision in Knowles "holds that a search incident to a citation cannot be as expansive under the Fourth Amendment as one incident to an arrest." We cannot find such a holding in Knowles. In any event, it is clear that what the Court actually held in Knowles was that the Fourth Amendment forbids expansion of the search

6

incident to arrest exception to include a search incident to citation.  Id. at 118-19.

The Commonwealth also argues that the Supreme Court's subsequent decision in Atwater v. City of Lago Vista, 532 U.S. 318 (2001), is controlling rather than Knowles and supports its position that the officers had probable cause to arrest Moore because he committed a misdemeanor in their presence.  In Atwater, a police officer observed that Gail Atwater was driving her pickup truck with her young son and daughter in the front seat, all without seat belts.  This conduct was prohibited by a Texas statute providing for a fine of not less than $25.00 nor more than $50.00.  Id. at 323-24.

The officer pulled Atwater over, handcuffed her, placed her in his squad car, and drove her to the local police station, where she was placed in a jail cell for about one hour, after which she was taken before a magistrate and released on bond. She ultimately pleaded no contest to the seat belt charges and paid a $50.00 fine.  Id. at 324.

Atwater and her husband then filed an action in state court for damages against the officer, the City of Lago Vista, and the City's chief of police, alleging that the defendants had violated Gail Atwater's Fourth Amendment rights.  The action was removed to federal court.  The Atwaters were unsuccessful in the lower courts, and the Supreme Court granted certiorari "to

7

consider whether the Fourth Amendment, either by incorporating common-law restrictions on misdemeanor arrests or otherwise, limits police officers' authority to arrest without warrant for minor criminal offenses." Id. at 326. The Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Id. at 354.

Atwater, however, provides little support for the Commonwealth's position in this case. The Texas statute "expressly authorizes 'any peace officer [to] arrest without warrant a person found committing a violation' of [the Texas] seatbelt laws, [Tex. Transp. Code Ann.] § 543.001, although it permits police to issue citations in lieu of arrest." Id. at 323. The authority to effect such an arrest is lacking from our § 19.2-74, the statute at issue in this case. Furthermore, Atwater only involved the legality of an arrest; it did not involve any question about a search incident to the arrest.

Lovelace v. Commonwealth, 258 Va. 588, 522 S.E.2d 856 (1999), the other case cited by Moore in support of his position, came to this Court upon remand from the Supreme Court of the United States. John David Lovelace had been convicted in the Circuit Court of Halifax County for possession of marijuana and possession with intent to distribute cocaine. He appealed,

8

alleging that the trial court had erred in denying his motion to suppress evidence that was seized from him during a search of his person.  The Court of Appeals of Virginia affirmed the convictions.  Lovelace v. Commonwealth, 27 Va. App. 575, 500 S.E.2d 267 (1998).  This Court refused Lovelace's petition for appeal and his subsequent petition for rehearing.  Thereafter, the Supreme Court of the United States granted Lovelace a writ of certiorari, vacated the judgment of this Court, and remanded the case to this Court for further consideration in light of its decision in Knowles.  Lovelace v. Virginia, 526 U.S. 1108 (1999).

The Lovelace case implicated Code § 19.2-74(A)(2), which provides that "[w]henever any person is detained by . . . an arresting officer for a violation . . . of any provision of this Code, punishable as a Class 3 or Class 4 misdemeanor or any other misdemeanor for which he cannot receive a jail sentence, . . . the arresting officer shall take the name and address of such person and issue a summons . . . [and] shall forthwith release him from custody."

About ten o'clock at night, two deputy sheriffs observed Lovelace and several other men standing with open bottles of beer in their hands on the parking lot of a store in an area described as an " 'open air drug market.' "  Lovelace had a green bottle up to his mouth and appeared to be drinking from

9

it.  The men were ordered to lie face down on the ground after the deputies saw a bottle fly through the air and strike a car but could not see who threw it, although it came from the area where Lovelace had been standing.  258 Va. at 591, 522 S.E.2d at 857.

One of the deputies, Mike Womack, then approached Lovelace, who was lying on the ground as directed, and asked Lovelace his name.  Lovelace identified himself but remained silent when asked whether he had any guns or drugs.  Womack then performed a "patdown" of Lovelace and felt something like a bag in his pocket.  The deputy did not know if it was a plastic bag or what but he felt some lumps and something "squooshy," and he reached into Lovelace's pocket and retrieved the bag.  The officer then arrested Lovelace and charged him with possession of marijuana and possession with intent to distribute cocaine, but not with any alcohol-related offense.  The substance in the bag was later tested and identified as crack cocaine.  The test also identified some marijuana.  Id. at 591-92, 522 S.E.2d at 857.

The Commonwealth argued in Lovelace that the officers had probable cause to arrest Lovelace for drinking an alcoholic beverage in public and thus could conduct a search incident to arrest.  We disagreed, based on Knowles, and stated as follows:

> The encounter between Lovelace and the officers, while not involving a traffic offense, was nonetheless similar in nature and duration to a routine traffic stop.  We reach

> this conclusion primarily because the initial reason for detaining Lovelace was his alleged commission of a Class 4 misdemeanor for which the issuance of a summons was authorized under Code § 19.2-74(A)(2). Only if Lovelace had failed or refused to discontinue the unlawful act could the officer have effected a custodial arrest and taken the defendant before a magistrate. Code § 19.2-74(A)(2). However, there is no evidence in the record that Lovelace acted in such a manner. <u>The fact that the officers could have issued only a summons for the alcohol-related offense also negates the Commonwealth's argument that the existence of probable cause to charge Lovelace with drinking an alcoholic beverage in public allowed Womack to search him</u>. After <u>Knowles</u>, an "arrest" that is effected by issuing a citation or summons rather than taking the suspect into custody does not, by itself, justify a full field-type search.

<u>Id.</u> at 596, 522 S.E.2d at 860 (emphasis added). We concluded that "the search of Lovelace was not consistent with the Fourth Amendment," and we reversed and dismissed both of Lovelace's convictions. <u>Id.</u> at 597, 522 S.E.2d at 860.

The Commonwealth distinguishes <u>Lovelace</u> by saying that the police officer detained Lovelace to issue a citation and did not arrest him, give him the <u>Miranda</u> warnings, or inform him he was under arrest while, in Moore's case, he was placed under arrest and thus the officers "did not exceed their authority when they conducted the search" of Moore.

This is a distinction that makes no difference. While Lovelace was not actually arrested until after Officer Womack retrieved the "squooshy" bag from his pocket, Womack insisted in his testimony that, initially, he was "detaining the defendant because of the open containers of beer, the bottle-throwing

11

incident, and the odor of alcohol that he noticed when speaking with Lovelace," id. at 592, 522 S.E.2d at 857, facts indicative of the Class 4 misdemeanor of drinking in public. Code § 4.1-308. It was the type of offense for which Womack was detaining Lawrence that triggered the operation of Code § 19.2-74 and permitted Womack to issue only a summons to Lovelace since none of the statute's exceptions were present. Because Womack was authorized to issue only a summons for the alcohol-related offense, he could not lawfully conduct a full field-type search incident to an arrest. Lovelace, 258 Va. at 596, 522 S.E.2d at 860.

The same conclusion applies to the case at bar. Our statement in Lovelace could have equally been written using Moore and his charged offense: "The fact that the officers could have issued only a summons for the [driving on suspended license] offense also negates the Commonwealth's argument that the existence of probable cause to charge [Moore] with [driving on suspended license] allowed [the officer] to search him." Id.

The officers were authorized to issue only a summons to Moore for the offense of operating a vehicle on a suspended license since none of the exceptions in Code § 19.2-74 were present. Thus, under the holding in Knowles, the officers could not lawfully conduct a full field-type search. We find Knowles and Lovelace controlling and hold that the search of Moore was

12

not consistent with the Fourth Amendment.  Accordingly, we will reverse the judgment of the Court of Appeals and dismiss the indictment against Moore.

Reversed and dismissed.
