# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2885
_____

United States of America

*Plaintiff - Appellee*

v.

Douglas I. Suing

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: December 11, 2012
Filed: April 10, 2013

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Law enforcement searched computer hard drives found in Douglas Suing's vehicle and residence and discovered child pornography. After being charged with three violations of federal child pornography laws, Suing entered a conditional guilty plea to one count of producing and manufacturing child pornography in violation of

18 U.S.C. § 2251(a), preserving his right to appeal the district court's[1] denial of his motion to suppress evidence discovered in the searches of his vehicle and residence. We conclude the searches did not violate the Fourth Amendment. We therefore affirm Suing's conviction.

I

In October 2009, a member of the Federal Bureau of Investigation Cyber Crimes Task Force (CCTF) identified a computer that was sharing images and videos of known child pornography via a peer-to-peer network. The computer was identified by its unique Internet Protocol (IP) address. The CCTF applied for and obtained an administrative subpoena to serve on the Internet Service Provider (ISP) associated with the computer's IP address. Based on the ISP's response to the subpoena, the CCTF determined the IP address was assigned to Suing at a residence in Omaha, Nebraska, specifically 11507 Decatur Plaza, Apartment 4117. The CCTF then conducted surveillance at the Decatur Plaza address and a records check in anticipation of obtaining a search warrant, but discovered Suing had moved out of the apartment.

In May 2010, the CCTF issued another subpoena to the ISP in order to determine Suing's new address. The May 2010 subpoena was issued by the Douglas County (Nebraska) Attorney's office, and signed by the Chief Deputy County Attorney. The ISP provided the CCTF with Suing's new address, specifically 10923 Western Plaza, Apartment 20, in Omaha. Between May 2010 and January 2011, the CCTF conducted surveillance at the Western Plaza address, but was unable to observe Suing (or a vehicle registered to Suing) at the address.

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

In January 2011, in an event unrelated to the Omaha investigation, a Navajo County (Arizona) Deputy Sheriff observed a vehicle with Nebraska license plates traveling on Interstate 40 in northern Arizona and following too closely behind a semi tractor trailer. The deputy stopped the vehicle to issue a warning ticket to the driver for following too closely, a violation of Ariz. Rev. Stat. § 28-730. After stopping the vehicle, the deputy identified Suing as the driver. While completing the warning ticket, the deputy noticed Suing was exceptionally nervous, i.e., his hands were shaking, he avoided eye contact, and he hesitated before responding to the deputy's questions. The deputy also noticed that Suing's vehicle was full of items, as if he was moving.

The deputy asked Suing if there was anything inside the vehicle about which he should be concerned. Suing asked, "Like what?" The deputy responded, "Anything illegal. Paraphernalia, weed, meth, guns, bongs." The deputy then asked Suing if he would consent to a search of the vehicle. Suing agreed and signed a consent form. The consent form allowed law enforcement to "search the vehicle listed . . . to include luggage, containers, and contents of all." After waiting for a back-up officer to arrive, the deputy began his search. During the search, he noticed the back seat was broken and the area where the spare tire would normally be located was inaccessible. From his past experience, the deputy suspected the vehicle's condition signaled a possible hidden compartment used to transport drugs. The deputy deployed the drug dog he had in his squad car. The drug dog alerted on both the vehicle's passenger side and the broken back seat.

After the drug dog alert, the deputy brought the vehicle to the Sheriff's office for a more thorough search. During this search, officers found an external computer hard drive in a bag on the front passenger seat. Based on past experience of hard drives containing evidence of narcotics activities such as drug ledgers, photos, and other incriminating information, the supervisor of the narcotics and canine officers plugged the hard drive into a computer to search its contents. Almost immediately

-3-

after beginning the contents search, the supervisor found a number of thumbnail images of child pornography. He shut the computer down, contacted a local prosecutor for advice, and then sought a search warrant to switch the focus of the search from evidence of drug activity to evidence of child pornography. After a judge authorized a new search for child pornography, over 124,000 images and 1,400 videos of child pornography were found on the hard drive. Suing was placed under arrest.

Turning back to the Omaha investigation, the CCTF obtained a search warrant for Suing's Western Plaza apartment in Omaha shortly after learning of his arrest in Arizona. A second Douglas County Attorney subpoena (the January 2011 subpoena), again signed by the Chief Deputy County Attorney and issued to the ISP provider, reconfirmed that Suing's address was still at Western Plaza. The search warrant application included historical information from the CCTF's lengthy investigation of Suing in Omaha, as well as information regarding the Arizona arrest. A federal magistrate judge authorized a search of Suing's apartment. During the search, an additional 200 videos and 5,000 images of child pornography were found on computer hard drives in the apartment. The metadata from some of the videos and images indicated they were produced with a Canon Digital Camera. A CCTF investigator then applied for and obtained a second federal warrant to search for the camera and other equipment related to the manufacture and production of child pornography. During the second search of Suing's apartment, the CCTF found and seized a Canon Digital Camera.

In February 2011, a federal grand jury returned a three count indictment against Suing charging him with one count of producing and manufacturing child pornography in violation of 18 U.S.C. § 2251(a), one count of receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2), and one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Suing filed a motion to suppress the evidence found during and following the Arizona

traffic stop, in part claiming the execution of the search warrant for the external hard drive found in his vehicle violated the Fourth Amendment. He also challenged the execution of the federal search warrants for his Omaha apartment, in part claiming those search warrants were tainted by information from the allegedly unlawful Arizona search. After conducting an evidentiary hearing, a federal magistrate judge issued a report recommending that the motion to suppress be denied. The district court adopted the report and recommendation and denied Suing's suppression motion. Suing then entered a conditional plea of guilty to one count of producing and manufacturing child pornography, preserving the right to file this appeal.

II

"When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Anderson, 688 F.3d 339, 343 (8th Cir. 2012) (citing United States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006)).

Suing first claims his Fourth Amendment rights were violated by the use of the evidence discovered in Arizona. He concedes he signed a consent form after the traffic stop allowing law enforcement to "search the vehicle listed . . . to include luggage, containers, and contents of all," but contends the search of the computer hard drive for child pornography exceeded the scope of his consent to search the vehicle for drugs. In response, the government argues the search of the hard drive fell within Suing's unlimited consent to allow a search of all containers and their contents for "[a]nything illegal." In the alternative, the government contends the search for child pornography was authorized by the second search warrant, obtained after law enforcement immediately stopped the search for evidence of illegal drug activity when they discovered child pornography on the computer hard drive.

-5-

The procedure followed by law enforcement in this case was addressed in United States v. Hudspeth, 459 F.3d 922 (8th Cir. 2006), rev'd in part on other grounds, 518 F.3d 954 (8th Cir. 2008) (en banc). In Hudspeth, as part of an investigation into the sale of large quantities of pseudoephedrine cold tablets, police executed a search warrant at the defendant's business. While examining his computer, authorities found images of child pornography. As they did here, when officials found the images, they immediately stopped searching for evidence of illegal drug activity, contacted a prosecutor for advice, and obtained a second warrant authorizing a search for child pornography. 459 F.3d at 925. We concluded "the officers did not exceed the scope of Hudspeth's consent to search the computer" because they did not interrupt the drug search and act without judicial authority by continuing a child pornography search without first obtaining a new search warrant. Id. at 928. We contrasted the procedure followed in Hudspeth with the Fourth Amendment violation found in United States v. Carey, 172 F.3d 1268 (10th Cir. 1999). Id. In Carey, the Tenth Circuit concluded a detective exceeded the scope of a warrant authorizing a search for evidence of drug trafficking when he abandoned his "drug" search after finding child pornography on a computer, but continued a five-hour search for child pornography without first obtaining a new search warrant. 172 F.3d at 1273.

The law enforcement conduct involved here is governed by Hudspeth and unlike the Fourth Amendment violation found in Carey. Here, the officer did not abandon his drug search and continue a new, extended search for child pornography without judicial authority. Instead, he immediately stopped the search, called a prosecutor for advice, and obtained a new warrant authorizing the search for child pornography. We therefore conclude the officer did not exceed the scope of Suing's consent, even assuming the consent was limited to a search of the vehicle for evidence of drug activity.

-6-

Suing next argues his Fourth Amendment rights were violated by the use of the evidence discovered in the searches of his Omaha apartment. Most of his arguments hinge on his claim that the Arizona search was illegal. He argues the illegality of the Arizona search tainted the Omaha search warrant affidavit because the affidavit included information from the Arizona search. Having concluded the Arizona child pornography search did not violate the Fourth Amendment, Suing's arguments in this respect fail.

Suing also contends the Omaha searches violated his Fourth Amendment rights because the two subpoenas issued by the Douglas County Attorney in May 2010 and January 2011 were invalid. He argues the subpoenas were not issued in accordance with Nebraska law because they were signed by the Chief Deputy County Attorney instead of the County Attorney. See Neb. Rev. Stat. § 86-2,112 (stating in relevant part "[t]he Attorney General or any county attorney may . . . subpoena witnesses . . . and require the production of records . . . which constitute or contain evidence relevant or material to the investigation or enforcement of the laws of this state when it reasonably appears that such action is necessary and proper"). Suing contends the statute's reference to "any county attorney" only refers to elected officials, not their appointed deputies or assistants, but does not cite any case law interpreting § 86-2,112 in such a manner.

Suing's argument fails for several reasons. First and foremost, Suing chose to share pornographic files via a peer-to-peer network. As a result, he "had no expectation of privacy in [the] government's acquisition of his subscriber information, including his IP address and name from third-party service providers." United States v. Stults, 575 F.3d 834, 842 (8th Cir. 2009) (citing United States v. Perrine, 518 F.3d 1196, 1205 (10th Cir. 2008)). Suing therefore cannot meet his burden of proving a Fourth Amendment violation because he has failed to demonstrate an expectation of privacy that society is prepared to accept as reasonable. Id. at 843; see also United States v. James, 534 F.3d 868, 872 (8th Cir. 2008) (setting forth the two-part test a

-7-

defendant must satisfy to show a legitimate expectation of privacy in an area searched by the government in order to invoke the protections of the Fourth Amendment).

In addition, even if we accepted Suing's unsupported interpretation of Neb. Rev. Stat. § 86-2,112, his argument is still based on the flawed premise that a violation of state law necessarily equates to a violation of the federal constitution, a premise we have repeatedly rejected. See, e.g., United States v. McIntyre, 646 F.3d 1107, 1113 (8th Cir. 2011); United States v. Burtton, 599 F.3d 823, 828 (8th Cir. 2010); United States v. Bell, 54 F.3d 502, 504 (8th Cir. 1995). To determine whether the Fourth Amendment was violated, we focus instead on whether the searches of Suing's Omaha apartment and computer hard drives were "based on probable cause." Bell, 54 F.3d at 504. The only argument Suing makes regarding a lack of probable cause for the Omaha search warrants is his claim the warrants were tainted by information from the allegedly illegal Arizona search. We have already rejected that argument. We therefore conclude Suing has failed to demonstrate the Omaha searches violated his Fourth Amendment rights.

III

Accordingly, we affirm the judgment of the district court.

_____